## Lutellus Smith, Appellee, v. Edward J. Kelley, Appellant.

### Gen. No. 13,970.

TRIAL—*when refusal to permit re-opening of case not ground for reversal.* After the evidence upon both sides has been closed and the court has indicated his intention of directing a verdict, it is not an abuse of discretion to refuse to re-open the case to permit the introduction of additional testimony, where the offer of proof is indefinite and its probative value unshown.

Assumpsit. Appeal from the Circuit Court of Cook county; the Hon. ARTHUR H. FROST, Judge, presiding. Heard in this court at the October term, 1907. Affirmed. Opinion filed October 8, 1908.

HENRY J. GIBBS, for appellant.

CHARLES DANIELS and SUMNER C. PALMER, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

This is an appeal from a judgment of the Circuit Court for $41.82 rendered against the appellant, who was defendant below, in favor of appellee, who was plaintiff below. The action was on a promissory note as follows:

"$28.10.    CHICAGO, ILLINOIS, Dec. 30, 1897.

On or before January 15, 1898, after date, for value received, I promise to pay to the order of myself the sum of Twenty-eight and 10/100 Dollars at 100 Washington Street, Chicago, Room 909, with interest at the rate of——per cent per annum after——until paid.

EDWARD J. KELLEY."

The note was also indorsed in blank by Edward J. Kelley.

The suit was originally brought before a justice of the peace June 15, 1906. Judgment was there obtained for $42 and costs on July 20, 1906. On an appeal to the Circuit Court and a trial *de novo* a jury, on April 16, 1907, found a verdict for the plaintiff for $41.82. A new trial was granted by the trial court on May 18, 1907, and the cause was again submitted to a jury on June 10, 1907. The jury on this trial was instructed by the court to find the issues for the plaintiff and assess his damages at $41.80. A verdict was rendered accordingly, and after a motion for a new trial and one in arrest had been overruled by the court, this judgment appealed from was entered.

The assignments of error in this court cover the rulings of the court below in instructing the jury to find for the plaintiff, in overruling the defendant's motion for a new trial and in entering judgment for the plaintiff, and in refusing to admit oral testimony as to the contents of a certain life insurance policy hereinafter referred to.

We should have been as well satisfied in this case had the issues been submitted to a jury. The rule is— as stated by counsel for appellant—that in cases of any doubt it is the better practice. The trial judge, if the verdict in such case is against the manifest weight of the evidence, can set it aside and grant a new trial.

But we are not of the opinion that the court so erred in peremptorily instructing the jury in this case, that we should reverse the judgment. This case, involving less than fifty dollars, has now been three times tried, with the same result, and in view of the evidence presented by the record we do not think there could ever be a verdict or judgment the other way which could be sustained.

The note in question was given, according to the defendant's own testimony, as a premium payment for a policy of life insurance for $1,000, which he agreed to take from the New York Life Insurance Company. He received the policy, but says it did not have some conditions in it that he had stipulated for, and that he sent it back at some time after the maturity of the note, which only ran for sixteen days and was payable "on or before" and was intended evidently as practically a cash payment of the first premium. But he mailed the policy not to Mr. Smith, the owner of this note, who was the employer of the sub-agent, one Mr. Glenn, a friend of the defendant, nor to the company, but to Glenn, and he did not send it to Glenn's residence, which he says he knew, but simply to Glenn "in the care of the New York Life Insurance Company, New York Life Building, Chicago." There was no other evidence of what became of it. He did not know, he says, where Glenn's office was. He says Glenn had previously declined to take it back and had said the company would not take it back. This is all very vague, and the transaction looks like a completed one, as to which the defendant became dissatisfied.

He contends, however, that the policy delivered was not what he bargained for and gave the note for. This is his language:

"He (Glenn) told me he would give me a policy for one thousand dollars with a guaranteed cash surrender value, and he told me the amount; it is so long ago now, I don't recall what the amount was. I am inclined to believe it was five hundred and eighty-eight or six hundred and eighty-eight dollars, and I told him if he could give me a policy like that I would take it, and he asked me to sign this note in payment for such a policy, and I signed the note and he never delivered such a policy. He did leave a policy in my office, but that policy did not contain a guaranteed cash surrender value, so I returned it."

It will be seen that the defendant here undertook to state the difference between the policy contracted for and the one received; although he complains that he afterward was not allowed to prove it.

The difference, however, which he alleges is an impossible one, unless some other factor is introduced into the description of the policy he bargained for. Taking his words in their natural meaning they import that he was promised on the payment of $28.10 a policy for $1,000, which should immediately have a cash surrender value of $588 or $688. Such a proposition of course is too unreasonable to be considered. It is possible to suppose that a policy with such a guaranteed surrender value at the end of a long number of years might be promised, but it is evident that the witness when testifying could have had no very definite idea of wherein this apparently fully executed transaction needed reformation to make it conform to his expectations.

The remarks of the court about not hearing all the testimony and his consequent request to the reporter to read it to him, strikes us as showing conscientious attention to it rather than neglect of it. After it had all been read, including of course the testimony of the defendant which we have quoted concerning the policy delivered to him, the court declared his intention of instructing the jury for the plaintiff. Then counsel for defendant said:

"I want to make an offer to show what the policy was they delivered and what they agreed to deliver."

To which the court replied: "I don't think I will allow that at this time, it is too late."

The court might, in his discretion, have re-opened the case—told counsel to call his proposed witness, whoever he might be, and have sent the case to the jury—but we cannot hold that it was reversible error under the circumstances for him not to have done so. The offer was in no sense a definite one. It had no

specification of what it was hoped to prove nor by whom, nor how the proof would add to or amend what the defendant had already sworn to.

The judgment of the Circuit Court is affirmed.

*Affirmed.*